**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Anthony Azzinaro, *et al.*,

        Plaintiffs,

v.

Shyft Group Incorporated, *et al.*,

        Defendants.

No. CV-21-01990-PHX-JJT

**ORDER**

At issue is Plaintiffs Anthony Azzinaro and Kathryn Lindsay's Motion to Preclude Testimony of Henry Miller (Doc. 84, Mot.), to which Defendants Shyft Group Inc. and Shyft Group USA Inc. filed a Response (Doc. 90, Resp.) and Plaintiffs filed a Reply (Doc. 95, Reply). The Court resolves this Motion without oral argument. LRCiv 7.2(f).

## I.    BACKGROUND

On October 27, 2019, Plaintiffs were driving their Recreational Vehicle ("Subject RV") on the freeway in Cochise County, Arizona, when the front passenger-side tire ruptured and the Subject RV burst into flames, causing severe injuries to Plaintiffs. (Doc. 1-1, Compl.) Plaintiffs claim the Subject RV's fuel fill line was "unprotected," and the tire blowout knocked the fuel fill line from the fuel tank, causing the fire and Plaintiffs' injuries. (Compl. ¶ 30.) Defendants designed and manufactured the Subject RV's chassis.

Plaintiffs raise two claims against Defendants based on their design of the allegedly unprotected fuel line and its placement: (1) Strict product liability for a design defect, and (2) Negligence in the design of the Subject RV's chassis. (Compl. ¶¶ 35–49.) Plaintiffs

now ask the Court to preclude certain testimony of Defendants' medical expenses expert, Henry Miller, Ph.D.

## II.   LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence tasks the trial court with ensuring that any expert testimony provided is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.* (*Daubert*), 509 U.S. 579, 589 (1999). "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. The trial court must first assess whether the testimony is valid and whether the reasoning or methodology can properly be applied to the facts in issue. *Daubert*, 509 U.S. at 592–93. Factors to consider in this assessment include: whether the methodology can be tested; whether the methodology has been subjected to peer review; whether the methodology has a known or potential rate of error; and whether the methodology has been generally accepted within the relevant professional community. *Id.* at 593–94. "The inquiry envisioned by Rule 702" is "a flexible one." *Id.* at 594. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.*

The *Daubert* analysis is applicable to testimony concerning scientific and non-scientific areas of specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). However, the *Daubert* factors may not apply to testimony that depends on knowledge and experience of the expert, rather than a particular methodology. *U.S. v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (citation omitted) (finding that *Daubert* factors do not apply to police officer's testimony based on 21 years of experience working undercover with gangs). An expert qualified by experience may testify in the form of opinion if his or her experiential knowledge will help the trier of fact to understand evidence or determine a fact in issue, as long as the testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts of the case. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 579.

The advisory committee notes on the 2000 amendments to Rule 702 explain that Rule 702 (as amended in response to *Daubert*) "is not intended to provide an excuse for an automatic challenge to the testimony of every expert." *See Kumho Tire Co.*, 526 U.S. at 152. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citation omitted).

## III.   ANALYSIS

In their Motion, Plaintiffs argue that the Court should preclude Dr. Miller's medical expenses testimony because it is irrelevant, violates Arizona's collateral source rule, and is unreliable by failing to depend on information related to this case.

### A.   The Collateral Source Rule and Reasonableness

If a jury decides a defendant is liable to a plaintiff in a personal injury case, the jury must decide the reasonable and fair compensation due the plaintiff, which includes a determination of the "[r]easonable expenses of necessary medical care, treatment, and services rendered." Rev. Ariz. Jury Instruct. (Civil) 7th ("RAJI"), Personal Injury Damages No. 1. The parties both posit that the reasonableness of medical expenses "revolves around the fair-market value of the services, meaning the price at which a willing buyer and willing seller aware of material facts, with adequate time to decide and no duress, would reach agreement." (Mot. at 6.)

Medical bills for health care services at Valleywise Health Medical Center that Plaintiffs claim arose as a result of injuries from the Subject RV fire generally identify two cost bases for each service, the hospital charge and the rate negotiated with Plaintiffs' health insurance carriers. In his report, Dr. Miller opines that "hospital charges are not a measure of the reasonable value of hospital services," and, for example, "a hospital does not expect to receive its charges from uninsured patients." (Doc. 84-1, Miller Report at 3.) Moreover, he states that "[c]ommercial insurers contract with hospitals to establish mutually acceptable payment rates." (Miller Report at 8.)

As applied by Arizona courts, "the collateral source rule . . . requires that payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or part of the harm for which the tortfeasor is liable." *Lopez v. Safeway Stores, Inc.*, 129 P.3d 487, 491 (Ariz. Ct. App. 2006) (quoting *Taylor v. S. Pac. Transp. Co.*, 637 P.2d 726, 729 (Ariz. 1981), and Restatement (Second) of Torts § 920A(2) (1979)) (internal quotation marks omitted). With regard to the applicability of Arizona's collateral source rule in this case, both sides rely on *Lopez*, in which the Arizona Court of Appeals examined whether the collateral source rule applied to write-offs to the plaintiff's medical expenses where the plaintiff incurred medical bills, or "hospital charges," of nearly $60,000, but more than $42,000 was written off as adjustments through contractual agreements with the plaintiff's insurance carriers. *Id.* at 488. As a result, the health care providers accepted $16,837 in full satisfaction of medical services rendered. *Id.* The court concluded that the collateral source rule applies to contractual write-offs to medical costs as much as it applies to payments to health care providers made by insurance carriers, because "the fundamental purpose of the [collateral source] rule" is "to prevent a tortfeasor from deriving any benefit from compensation or indemnity that an injured party has received from a collateral source." *Id.* at 495 (quoting *Acuar v. Letourneau*, 531 S.E.2d 316, 321-23 (Va. 2000)).

> [T]he focal point of the collateral source rule is not whether an injured party has "incurred" certain medical expenses. . . . [The defendant] cannot deduct from full compensation any part of the benefits [the plaintiff] received from his contractual agreement with his health insurance carrier, whether those benefits took the form of medical expense payments or amounts written off because of agreements between his health insurance carrier and his health care providers. Those amounts written off are as much of a benefit for which [the plaintiff] paid consideration as are the actual cash payments made by his health insurance carrier to the health care providers. . . . [I]t is the tortfeasor's responsibility to compensate for all harm that [it] causes, not confined to the net loss that the injured party receives.

*Id.* at 495-96 (quoting *Acuar*, 531 S.E.2d at 321-23, and Restatement (Second) of Torts § 920A cmt. b (1977)).

Based on *Lopez*, Plaintiffs contend that "Dr. Miller's testimony about discounts, write-offs, and negotiated contract rates is not used to assess the reasonableness of Plaintiff's medical expenses and therefore violates the collateral source rule." (Mot. at 3.) That conclusion goes too far. As Defendants point out, the *Lopez* court was not asked to assess the reasonableness of the plaintiff's medical costs in that case, because the parties there stipulated to reasonableness should the court find, as it did, that the collateral source rule applied to write-offs through contractual agreements between the health care providers and the plaintiff's insurance carriers.

But Plaintiffs are right to point out the tension between the collateral source rule—where a fact finder should not consider write-offs, that is, the reduced medical expense payments accepted by the plaintiff's health care provider resulting from an agreement between the plaintiff's health care provider and health insurance carrier—and a determination of reasonableness—where a fact finder should consider evidence relevant to its determination of fair market value of health care services, that is, the price at which a willing buyer and willing seller would reach agreement. The Court cannot conclude that the negotiated or written-off contract rate for a medical service is irrelevant to a determination of reasonableness; that rate is, in one sense, the very price that the willing seller, the health care provider, has agreed to accept for health care services. Indeed, this is, in part, the nature of Dr. Miller's testimony on this point.

As a question of fact, the determination of reasonable medical expenses must be made based on all relevant and otherwise admissible evidence. The parties point to no legal authority interpreting the collateral source rule as requiring preclusion of evidence of negotiated or written-off contract rates in the fact finder's determination of reasonableness. Because it is relevant to the fact finder's decision, the Court will allow Dr. Miller's testimony regarding negotiated or written-off contract rates for medical services (as well as his testimony regarding Valleywise's self-pay rates). However, the Court will carefully instruct the jury that these rates are to be considered only in the determination of fair market value of health care services, and the jury may not consider the fact of Plaintiffs' insurance

coverage, the insurer's medical expense payments on behalf of Plaintiffs, or the fact that Plaintiffs owed less simply because they had medical insurance coverage providing for reduced rates. In other words, Defendants, if liable, are responsible to reasonably compensate Plaintiffs for all harm that they caused, not confined to the net loss that Plaintiffs incurred.

### B.   Relevance, Reliability, and Prejudicial Nature of Dr. Miller's Testimony

Plaintiffs also argue that the Court should preclude the following opinions of Dr. Miller: (1) the Generally Accepted Accounting Principles ("GAAP") do not recognize hospital charges as the amount a hospital expects to be paid; (2) hospital charges are "unregulated and set by hospital managers at any level they see fit"; (3) hospital charges are not related to the cost of hospital services; and (4) there are "substantial and unexplained variances across similar hospitals for the same services." (Mot. at 5-11 (quoting Miller Report).) Plaintiffs contend this testimony is irrelevant to the determination of reasonable medical expenses, unreliable by lacking an identifiable methodology, and in one instance prejudicial.[1]

Dr. Miller's testimony regarding GAAP and its method of accounting for what a hospital expects to be paid for health care services as well as his testimony that hospital charges are unregulated and unrelated to the hospital's costs are relevant to the fact finder's determination of fair market value of medical expenses, that is, the price a hospital will reasonably agree to accept for medical services. To the extent a methodology is implicated, the link between these factors and the price acceptable to a hospital is clear, and the factors will help a jury assess the value of "hospital charges" as a measure of reasonable medical expenses. The Court agrees with Plaintiffs that Dr. Miller does not tie these generalized conclusions based on his experience to Valleywise specifically, but Plaintiffs may robustly cross-examine Dr. Miller on this point.

With regard to Dr. Miller's opinion that hospital charges are unrelated to the hospital's costs, Plaintiffs also argue that the prejudicial nature of this testimony would

---

[1] Plaintiffs do not challenge Dr. Miller's qualifications to offer the opinions in his report.

exceed its probative value by focusing the jury on a hospital's profit rather than the price a hospital will reasonably agree to accept. The Court disagrees. The Court will instruct the jury on the measure of reasonable medical expenses, and, again, the link between the price a hospital is willing to accept for a service and the hospital's cost for that service is clear.

Finally, Dr. Miller provides data comparing Valleywise's hospital charges to those of other area hospitals for services unrelated to Plaintiffs' health care—heart failure and shock, and respiratory infections and inflammation—and he opines that there are unexplained variances in this data. The Court agrees with Plaintiffs that this portion of Dr. Miller's testimony fails both the relevance and reliability tests. The variances in hospital charges with just two other hospitals for services unrelated to this case are irrelevant to a jury's determination of the reasonable expenses for Plaintiff's medical care in this case. Moreover, the data suffers a lack of reliability by way of its small sample and arbitrariness. For this reason, the Court will preclude Dr. Miller from offering the opinions in section 8 of his report. (Miller Report at 7 § 8.)

**IT IS THEREFORE ORDERED** granting in part and denying in part Plaintiffs' Motion to Preclude Testimony of Henry Miller (Doc. 84). Dr Miller may not offer the opinions in section 8 of his report (Doc. 84-1, Miller Report at 7 § 8), but Plaintiffs' Motion is denied in all other respects.

Dated this 13th day of September, 2023.

Honorable John J. Tuchi
United States District Judge